Hanlon *v.* Supervisors of Westchester.

———————•●•———————

PATRICK H. HANLON *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF WESTCHESTER, and others.

57b 383
64ad589
57b     383
79 AD⁰188
79 AD⁰195

To enable a plaintiff to maintain an action against the officers of a county and enjoin the collection of a tax, he must bring his case within some one of the acknowledged heads of equity jurisdiction, viz: (1.) Where the proceedings of the subordinate tribunal will necessarily lead to a multiplicity of actions; (2.) Where they lead, in their execution, to the commission of irreparable injury to the freehold; (3.) Where the claim of the adverse party to the land bought at the tax sale is valid upon the face of the instrument, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proven to establish invalidity or illegality; (4.) Where the tax is upon land, and the law allows it to be sold to collect the tax, and the conveyance to be executed would be conclusive evidence of title; (5.) Where the plaintiff has sustained special injury.

Whenever a case is presented falling within these exceptions, equity will interfere to arrest the excessive litigation, to prevent the irreparable injury, or to

Hanlon *v.* Supervisors of Westchester.

remove or prevent the cloud upon the title; where no relief can be had by *certiorari*, to review the proceedings, and unless the plaintiff can have an injunction, he will be without remedy.

Where commissioners were appointed, by an act of the legislature, to lay out an avenue, and commissioners of estimate and assessment were directed to be appointed, and the damages agreed upon or awarded, and the expense of working the road, were directed to be levied, assessed and collected as other town charges; but it appeared that, beyond taking the oath of office, and making a contract for the work, the commissioners had done nothing to acquire jurisdiction; that they had not laid out the avenue, although it passed, partly, through private lands; that no map was filed until after an action to set aside their proceedings was commenced, when a map was filed with no date, except that of the year; that no other papers had been filed, with the town clerk; and that no commissioners of estimate and assessment had been appointed; *Held* that the commissioners had no authority to make a requisition for the damages and expenses of opening and working the road; and that the supervisors had no authority to direct the money to be raised, and their action on the subject was not simply illegal, but was wholly void.

Although the remedy against unwise or unjust modes of taxation is to be sought from the legislative department, and not from the judiciary, yet the remedy against legislative encroachments upon the constitution is to be sought from the judiciary.

The provision of the constitution of this State, (*art.* 1, § 7,) directing that when private property shall be taken for any public use, the compensation to be made therefor shall be ascertained by a jury, or by commissioners appointed by a court of record, cannot be waived by an owner of land, who chooses to make an agreement for the amount of compensation, so as to dispense with a jury or commissioners.

The determination of the amount of compensation is in the nature of a judicial proceeding, and where the amount is to be paid for by the public, the public, as a party in interest, have a right to that proceeding.

Under the act of the legislature for laying out Madison avenue, in Westchester county, (*Laws of* 1869, *ch.* 850,) compensation to the land owners, for the land taken, must be assessed by a jury, or commissioners, before the commissioners named in the act can make a requisition upon the supervisors for the damages and expense of operating and working the avenue.

A statute which merely enacts that all the expenses of laying out, working and grading an avenue shall be paid in the manner provided in another act, without limiting or specifying any amount of money or tax to be raised or applied, does not "state" the tax, as required by article 7, §§ 13, 14, of the constitution. The legislature cannot devolve upon the commissioners the power to *state the tax*.

The legislature has power to appoint commissioners to lay out an avenue in a town, although there are already three commissioners of highways in such town, competent to act. Such commissioners are not town officers.

MOTION to continue an injunction. The action was brought against the board of supervisors of Westchester county, and the commissioners appointed to lay out and open Madison avenue, in that county, and others, to restrain the collection of a tax.

*John B. Haskin,* for the plaintiff.

*Robert Cochran, S. E. Lyon* and *W. H. Pemberton,* for the defendants.

TAPPEN, J. The plaintiff brings this action as an owner of land on Madison avenue, in the town of West Farms, and seeks an injunction restraining the collection of a tax amounting to $37,150, and that the commissioners named in the act of 1869, authorizing the laying out of Madison avenue as a highway be perpetually restrained, &c.

The plaintiff alleges, as grounds of action, among others, that he is an owner of lands on Madison avenue; that on May 11, 1869, the act in question was passed; that the commissioners named in the act proceeded to act under the same, and illegally agreed to pay some owners of land to be taken for the avenue, as damages therefor, the sum of $3500; that no compensation has been paid to the plaintiff, nor has compensation to any person been ascertained by a jury or by commissioners appointed by a court of record. And for special damage, the plaintiff avers that the commissioners named in the act, and those with whom they have contracted, are proceeding to work and grade the avenue, to cut down and through embankments, and to fill low ground, and at the entrance of the avenue, at Morris street, have blasted through thirteen feet of rock, preventing the plaintiff from having access to his property; that great injury is caused to the plaintiff's property by cutting off all ingress and egress, by flooding with water,

destroying shade trees, fences, &c.; and that thereby a public nuisance is created, specially injurious to the plaintiff. That the commissioners have prepared an estimate in writing of work to be done, as follows:

| | |
|---|---:|
| Right of way, | $3,500 |
| Grading, | 25,000 |
| Dry masonry, | 7,500 |
| Counsel fees, | 150 |
| Surveyor's fees, | 1,000 |
| | $37,150 |

and have asked that the same be incorporated in the tax levy of the town of West Farms, as a town charge; and that the supervisor did present a resolution, accordingly, to the board of supervisors, and caused the same to be passed.

The plaintiff also alleges that the accounts of the commissioners or contractors, in reference to the work in question, have not been presented to, or audited by, the town auditors, nor has any resolution been passed at a town meeting authorizing the raising of the money; nor has any statement of the improvements, or the expense thereof, been rendered to the auditors, or to any town-meeting; that Madison avenue is not in fact a highway; that a portion of the route is through the private property of Florine A. Everson; that the owners of the land taken or adjacent to Madison avenue have not released the same; and that such avenue is therefore a private road.

The bonded debt of the town is then set forth at $526,000, principally for roads and avenues, under different commissions; that the tax levy for the year is $245,000, or about $7 per $100 of valuation of property in the town, which is estimated, upon the assessors' books, at $3,376,370, real and personal.

The plaintiff avers the act in question to be void, for

the reasons, among others, that it does not accurately define the nature of the work, or the powers of the commissioners; that by virtue of the act they propose to take private property for local public use without compensation; that the necessity of the said road has not been determined by a jury of freeholders, and the damages or compensation to be awarded has not been determined in the manner required by the provisions of the constitution; that the act does not *state* the *tax,* as required by the constitution; and that the act is otherwise unconstitutional, because it does not limit the amount of tax to be imposed, or sufficiently define the manner of raising the same. That said act does not repeal the existing general law relating to the laying out and working of highways, and pursuant to which the proceedings respecting Madison avenue should be taken; and finally, that the commissioners have no power to grade and drain the lands upon Madison avenue at the general expense of the town.

The answer of the commissioners sets forth that they have proceeded to lay out and work the avenue pursuant to the provisions of the act, and have already done work thereon to the amount of $15,000; that they have, by virtue of the authority of said act, presented one estimate to the supervisor, and have asked for the sum of $37,150, for the purposes of said road; and that, at the request of said supervisor, the board of supervisors did pass a resolution authorizing the raising of that amount, and directing that the same may be incorporated in the annual warrant for the collection of taxes for the year 1869, in the town of West Farms. They aver that a certain portion of Madison avenue has heretofore been dedicated, laid out and worked as a public highway; and they admit that no releases have been given for the land over which the road is laid out; and they aver that they have entered into an agreement with one of the owners, (Everson,) by which

a right of way has been acquired, and the owner's claim for damages mutually agreed upon at $3000.

The affidavits of the supervisor and receiver of taxes are also presented, showing that the annual tax warrant was made out and delivered to the receiver, before the actual service of the injunction, though on the day of its service, and that he had collected a small amount of tax.

There is also a certificate of the clerk of the board of supervisors, showing that on December 2, 1869, a resolution was passed and papers presented, as follows:

"*Resolved,* That there be levied, assessed and collected, upon the taxable property of the town of West Farms, $37,150, for the purpose of working and grading a certain highway in said town, known as Madison avenue, according to an act passed May 11, 1869, and report herewith presented.

*Estimate of amount required regulating and grading Madison avenue.*

| | |
|---|---:|
| Right of way, | $3,500 |
| For grading, | 25,000 |
| Dry masonry, retaining walls and culverts, | 7,500 |
| Counsel fees, | 150 |
| Surveyor's, | 1,000 |
| Total amount, | $37,150 |

Dated November 22, 1869.

JOHN KERBY,
SAMUEL M. PURDY,
ALBERT AYRES,
JOHN J. HUNT,
          *Commissioners.*
JOHN L. MAPES,
          *Engineer.*"

"These are all the papers before the board relative to Madison avenue."

The annual tax warrant is also offered, by which it appears that in addition to the other sums of money directed to be collected, there is an item "for working and grading Madison avenue, the sum of $37,150." This is a distinct and specific item.

The plaintiff, by the affidavit of the town clerk and others, shows that no paper was filed in that office in relation to Madison avenue, save a map and survey filed December 30, 1869, after the passage of the resolution by the board of supervisors, and after the making out and delivery of the tax warrant; that no bill or account has been presented to the town auditors, or at any town meeting, in respect to Madison avenue, and that the town of West Farms is one highway district, and has three commissioners of highways, duly elected and performing the duties of their office; also showing that Madison avenue has never been a highway; that a portion of the land now required is private property; and that the whole length of the intended highway, for which thirty-seven thousand one hundred and fifty dollars is to be raised, is six thousand eight hundred feet, or about one mile and a quarter; that a portion thereof is in front of the police station house and town hall, which is town property; and that the intended road has there been excavated to the depth of thirteen feet in the solid rock, making the premises inaccessible to the people of the town.

One Sebastain Neuberger also joins with the plaintiff in prosecuting the action, and alleges that he is the owner of property on Madison avenue, consisting of a house and lot, for which he paid sixteen thousand dollars, in March, 1867; and that the commissioners are filling up the avenue in front of his premises from two to six feet in depth, preventing the use of his basement and stable, causing the water to flow upon his premises, making the use thereof as a dwelling dangerous to health, and entailing loss and damage which cannot be estimated in money.

There are many other facts set forth in the papers on either side, and a number of affidavits on either side, which have no bearing, and are not considered here. The salient points are here stated, and it remains to determine the law applicable to the case as presented, which will be done in the following order :

1. As to the standing of the plaintiff, and those joining with him, in maintaining this action.

2. As to the power of the commissioners under the act.

3. As to the constitutionality of the act.

To enable the plaintiff to maintain this action and enjoin the collection of the tax, he must bring his case within some one of the ackowledged heads of equity jurisdiction, which are held to be as follows. (*Heywood* v. *City of Buffalo*, 14 *N. Y. Rep.* [4 *Kern.*] 541.)

1st. Where the proceedings of the subordinate tribunal will necessarily lead to a multiplicity of actions.

2d. Where they lead, in their execution, to the commission of irreparable injury to the freehold.

3d. Where the claim of the adverse party to the land bought at the tax sale is valid upon the face of the instrument, or the proceedings sought to be set aside, and extrinsic facts are necessary to be proven to establish invalidity or illegality.

Also, where the tax is upon land, and the law allows it to be sold to collect the tax, and the conveyance to be executed by the proper officer would be conclusive evidence of title. (*Susquehanna Bank* v. *Supervisors of Broome*, 25 *N. Y. Rep.* 314.) And in *Milhau* v. *Sharp*, (27 *id.* 611,) the plaintiff's right to an injunction restraining a railway in Broadway was upheld upon the ground of *special injury*.

The plaintiff avers multiplicity of actions, but that does not appear as a fact. He avers irreparable injury to the freehold by the action of the commissioners, and he specifies the grounds thereof. The defendants generally deny

the averment, but do not deny the grounds set forth by the plaintiff.

The plaintiff also shows that it does not appear on the face of the proceedings of the board of supervisors that the tax is illegal, and consequently the proceedings to levy and collect the tax involve a tax sale, and create a cloud upon the title; and in the cases quoted it is held that when a case is presented falling within these exceptions, equity will interfere to arrest excessive litigation, to prevent the irreparable injury, or to remove or prevent the cloud upon the title.

Numerous cases are referred to in which the courts refuse to restrain the collection of a tax, and among the reasons given therefor, it is said "that the usual and undoubted remedy by *certiorari* is always open to every party conceiving himself aggrieved." That writ brings up the proceedings of the inferior body for review, and judgment passes directly upon their proceedings. Inasmuch as the *certiorari* to review the proceedings of the Madison avenue commissioners has been superseded by another tribunal, it would seem that the plaintiff herein must have an injunction, or be without any remedy.

In *Mohawk and Hudson Railroad Co.* v. *Clute,* (4 *Paige Ch. R.* 384,) the application was for an injunction restraining the collectors of the town of Rotterdam, and of the second ward of the city of Albany, from collecting the taxes which had been imposed upon the capital stock of the company, as real estate, in each of those places; and an injunction was granted against the Albany collector, after argument before the chancellor. In the case of *Redfield* v. *Supervisors of Genesee*, the plaintiff sought to restrain the collection of a tax by the town of Le Roy, and the motion was granted. The bill was filed against the supervisors before the issuing of the warrant; and the vice chancellor observes that there could be no objection to that course, as it avoids multiplicity of actions, which

would have been necessary had the complainant waited until the warrants were placed in the hands of the collectors of some twenty towns. (*Clarke Ch.* 42.)

In *Crooke* v. *Andrews*, (40 *N. Y. Rep.* 550,) the court reiterated the rule that a bill in equity would not lie to restrain the assessment or collection of taxes, but upheld the action, which was to remove a cloud upon the plaintiff's title arising from an illegal tax sale.

An incumbrance valid upon its face, which can only be impeached by proof of extrinsic facts, presents a case for invoking the aid of a court of equity to remove it as a cloud upon the title; and a bill will lie, as well to prevent a cloud as to remove one. (5 *Paige,* 493.　6 *id.* 262.)

The powers of the commissioners under the Madison avenue act may be briefly considered. They are appointed commissioners to lay out Madison avenue. They shall proceed, and commissioners of estimate and assessment shall be appointed, in the manner provided by the Fairmount avenue act. (*Laws of* 1868, *ch.* 736.) All proceedings of the commissioners of estimate and assessment, and all legal proceedings concerning the manner of confirming their report, and appeals therefrom, shall be conducted, and all expenses of laying out, working, extending, &c., shall be paid in the manner provided by that act; and that act provides for an application to the county judge for the appointment of three commissioners to award damages, pursuant to existing laws upon the subject of laying out highways; and the damages agreed upon or awarded, and the expense of working the road, shall be levied, assessed and collected as other town charges.

It appears, therefore, that beyond taking the oath of office, and making a contract for the work, the commissioners have not done anything to acquire jurisdiction. They have not laid out Madison avenue, which, it is conceded, passes partly through private lands. No map was filed until December 30th, 1869, after these proceedings

Hanlon *v.* Supervisors of Westchester.

were commenced; and on that day a map was filed with no date, save the year 1869. No other papers have been filed with the town clerk. The agreement with Florine A. Everson, for about three thousand dollars, which was to be paid for her land, is without power on the part of the commissioners, not only because of the constitutional provision, but because the act in question directs damages to be awarded pursuant to the existing highway laws; and, as has been shown, such laws limit the power to agree upon damages to the sum of one hundred dollars; and no commissioners of estimate and assessment have been appointed.

It is quite clear, therefore, that the requisition of the commissioners for the sum of thirty-seven thousand one hundred and fifty dollars was premature, and was wholly without authority at the time it was presented to, and the resolution passed by, the board of supervisors. The supervisors, therefore, had no authority to direct the money to be raised, and their action on the subject is not simply illegal; it is wholly void.

As to the question of constitutionality, it is to be conceded that the remedy against unwise or unjust modes of taxation is to be sought from the legislative department, and not from the judiciary. (*The People* v. *The Mayor &c. of Brooklyn*, (4 *N. Y. Rep.* [4 *Comst.*] 419.) But it is equally true that the remedy against legislative encroachments upon the constitution is to be sought from the judiciary. (*Cooley's Const. Lim.* 494, 495.)

The constitution of the State provides, in art. 1, sec. 7: " When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law. Private roads may be opened in the manner to be prescribed by law; but in every case the necessity of the road, and the amount of all damages to be sustained by

the opening thereof, shall be first determined by a jury of freeholders; and such amounts, together with the expenses of the proceedings, shall be paid by the person to be benefited."

The compensation to Florine A. Everson, or to other owners, has not been ascertained in the manner here required. The commissioners named in the Madison avenue act, (*Laws of* 1869, *ch.* 850,) are not therein authorized to make any agreement, but the act does provide that the commissioners shall proceed, and that all the expense of laying out, working, &c., shall be paid in the manner provided in another act, in relation to Fairmount avenue, passed May 8th, 1868, (*Laws of* 1868, *ch.* 736;) and by this act, commissioners therein named are authorized to make an agreement to pay the owners of land taken for the highway such damages as they shall mutually agree upon, &c.

It is claimed by the defendants, that the constitutional provision may be waived by the owner of the land, who chooses to make an agreement for the amount of compensation, and when such compensation is so agreed upon, no jury or commissioners are essential. I am not of that opinion. The determination of the amount of compensation is in the nature of a judicial proceeding, and where the amount is to be paid for by the public, the public, as a party in interest, have a right to that proceeding. (*Charles River Bridge* v. *Warren Bridge*, 7 *Pick.* 344. 11 *Pet.* 420, 571. *House* v. *City of Rochester*, 15 *Barb.* 519. *Clark* v. *City of Utica*, 18 *id.* 451.)

The general highway law of the state recognizes this view of the question, and enacts "that damages may be ascertained by the agreement of the owner and the commissioners of highways, providing such damages do not exceed one hundred dollars;" and beyond this amount the damages cannot be fixed by agreement. Again; the Madison avenue act nowhere provides, or limits, or specifies any amount of money or tax to be raised and applied.

Hanlon *v.* Supervisors of Westchester.

It enacts that all the expenses of laying out, working and grading, &c., shall be paid in the manner provided in the act of 1868, (*supra;*) and it also enacts, that the board of supervisors of the county of Westchester are "hereby directed to order a tax to be levied and assessed as provided in the act of 1868; and when collected, the receiver of taxes is to pay the same to the commissioners for the purposes aforesaid."

Article 7, of the constitution, sections 13, 14, reads: "Every law which imposes, continues or revives a tax, shall distinctly *state* the tax, and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or object."

The Madison avenue commissioners have here undertaken legislative functions, by stating *the tax,* i. e., the amount which they desire to be raised. No sum is named or limited in the act, and consequently no sum is authorized. It will not be claimed that the legislature can devolve upon the commissioners the power to *state the tax.* I cannot concede the view taken by the defendants' counsel, upon any construction of the English language, or any construction of this constitutional provision, that the Madison avenue act, by directing a tax to be levied and collected for the purposes of the act, thereby states the tax; it only states the object to which it is to be applied when collected.

And this view is confirmed by reference to article 8, section 9, of the constitution, which says it shall be the duty of the legislature to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debt and loaning credit, so as to prevent abuses in assessments, and in contracting debts by such municipal corporations. By this section, cities and villages may, by charter, have certain and restricted powers of correction conferred upon them as municipal corporations; but the section is ex-

pressly limited to cities and villages governed and organized as municipal corporations; and if it be the duty of the legislature, in such cases, to restrict the power of taxation and contracting debt, it cannot be held with any force that the legislature may authorize one or more persons, who are constituted commissioners for a specified local object, to impose, or require the supervisors to impose, unlimited taxation, or to contract unlimited debt.

An examination of local statutes shows that in most cases the principle of stating the amount of tax or limitation of debt is recognized and acted upon by the legislature. For instance, in the township in question, the act in relation to Locust avenue (1 *Laws of* 1869, *p.* 106, *ch.* 65) authorizes a town debt of $36,000. Chapter 380 of same volume, page 858, in relation to Fordham and Pelham avenues, authorizes a debt or expenditure for all purposes, not exceeding $20,000 per mile. Chapter 549 of the laws of 1868, (*vol.* 2, *p.* 1118,) in relation to the Westchester post road, authorizes a debt or expenditure not exceeding $10,000 per mile. Chapter 849 of the Laws of 1869, (*vol.* 2, *p.* 2046,) in relation to Franklin avenue, authorizes the town of West Farms to raise by loan such sum as may be deemed necessary by the commissioners for the purpose of the act, not exceeding $25,000. Chapter 851 of the same volume, page 2049, in relation to Fairmount avenue, expressly limits the cost of the work to a sum not exceeding $10,000, and provides that one third thereof shall be assessed upon adjoining lands, and the remaining two thirds, shall be raised as a town charge. And there are many other acts authorizing the laying out and working of public highways in other towns, in which the expense is specified and limited.

The plaintiff claims that inasmuch as the town has three highway commissioners, competent to perform all statutory duties in respect to highways, the appointment, in the Madison avenue act, of commissioners to lay out that

highway, is an infringement of the constitution, (*art.* 10, § 2,) which provides that " all city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose.   All other officers whose election or appointment is not provided for by this constitutution, and all officers whose offices may be hereafter created by law, shall be elected by the people, or appointed as the legislature may direct."

The controlling decision on this point is found in *The People* v. *Draper*, the Metropolitan Police case, (15 *N. Y. Rep.* 532,) in which it was held that offices created after the adoption of the constitution of 1846, might be filled in the manner authorized by the legislature, and that the legislature might create new districts for special purposes, and designate how the offices therein should be filled. (*P.* 547.)

The commissioners in the Madison avenue act are not town officers; they have a limited special duty assigned to them, and under the decision quoted, it was competent for the legislature to appoint them for the purposes of that act.

It will be seen that there are now in existence in one town five or six special commissions, acting under special laws for the laying out, in each case, of a particular road or avenue, with power to contract debts or expend moneys for the town, to a certain amount in most instances, but, in several cases without any limitation ; and that besides all these, there are three highway commissioners exercising the functions of their office.

It is not for the courts to question the wisdom of this legislation, which multiplies laws upon the yearly statute book, and the community interested or objecting must seek its remedy at the hands of the legislature.

From the facts and the law, I am, therefore, brought to the conclusion that the plaintiff makes out an apparent case for equitable relief, and that such relief, in the present aspect of the case, can only be had by restraining the collection of the Madison avenue tax; that no public inconvenience will result therefrom, inasmuch as it is one specific item, in no way involved in, or connected with, the other items in the tax warrant held by the receiver of taxes, and that the collection of such other items need not be delayed, except for the brief time required to compute the rate of tax, less the rejected Madison avenue item. The supervisor having delivered the tax warrant to the receiver of taxes before service of the injunction, the motion to continue the injunction as to him is denied, with $10 costs; and as to all the other defendants, the motion to continue the injunction is granted, with $10 costs to abide the event.

[KINGS SPECIAL TERM, March 7, 1870.  *Tappen*, Justice.]