ANSON E. ALVORD, Respondent, *v.* THE CITY OF SYRACUSE et al., Appellants.

1. SYRACUSE, CITY OF — SERVICE CONNECTIONS WITH WATER MAIN — VALIDITY OF ASSESSMENT. An assessment for the cost of service connections with city water mains is not authorized by the charter of the city of Syracuse (L. 1885, ch. 26, § 22, subd. 15, amd. L. 1893, ch. 531), which empowers the common council by ordinance to regulate and compel the making of proper connections between premises abutting on any street and any water main therein, and is void, since the common council can only act on the subject by ordinance and not by directing the levy of an assessment.

2. SUIT IN EQUITY — REMOVAL OF CLOUD ON TITLE — SETTING ASIDE LOCAL ASSESSMENT. The invalidity of a local assessment does not so appear on the face of the proceedings to enforce the same as to deprive the owner of the property assessed of his equitable right to maintain a suit in equity to set aside the assessment as a cloud on title and enjoin its enforcement and the sale of his property for its non-payment, although it was wholly unauthorized and void, where the statute providing for the execution of a certificate of sale and a conveyance to be made upon default of redemption does not require any statement therein as to the character of the tax or assessment, for the non-payment of which the sale was made, but only that the sale was made for unpaid city taxes.

*Alvord* v. *City of Syracuse,* 19 App. Div. 626, affirmed.

(Argued March 27, 1900; decided May 15, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 24, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James E. Newell* for appellants.   The common council had no authority to order the assessment levied, and, therefore, the assessment, as made by the assessors, creates no cloud on plaintiff's title, and this action cannot be maintained in equity to vacate or cancel the same.   (*Stuart* v. *Palmer*, 74 N. Y. 183; *Wells* v. *City of Buffalo*, 80 N. Y. 253; *Townsend* v. *Mayor*, 77 N. Y. 542; *Mellen* v. *Mellen*, 139 N. Y. 219; *Chase* v. *Chase*, 95 N. Y. 373; *Pooley* v. *City of Buffalo*, 124 N. Y. 206; *Rathbone* v. *Hooney*, 58 N. Y. 463; *Heywood* v. *City of Buffalo*, 14 N. Y. 534; *Mayor, etc.,* v. *Meserole*, 26 Wend. 132; *Phelps* v. *Mayor, etc.*, 112 N. Y. 216.)

*Louis L. Waters* for respondent.   A bill in equity will lie as well to prevent a cloud on title as to remove one.   (*Pettit* v. *Shepherd*, 5 Paige, 493; *Oakley* v. *Trustees of Williamsburgh*, 6 Paige, 262; *Crooke* v. *Andrews*, 40 N. Y. 547; *S. A. R. R. Co.* v. *Mayor, etc.*, 63 Hun, 274; *King* v. *Townshend*, 141 N. Y. 361; *Sanders* v. *Vil. of Yonkers*, 63 N. Y. 492.)   The plaintiff may have the relief sought in this case, even where the assessment is totally void and independent of the question of whether in proceedings to enforce the title of the purchaser at the tax sale, he would be obliged to develop the fatal defect in his title.   (*Oakley* v. *Trustees of Williamsburgh*, 6 Paige, 262; *Matter of S. A. M. E. Church*, 66 N. Y. 396; *T. G. Sem.* v. *Cramer*, 98 N. Y. 121; *Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118; *King* v. *Townshend*, 141 N. Y. 358; *Tingue* v. *Vil. of Port Chester*, 101 N. Y. 294; *Vaughn* v. *Vil. of Port Chester*, 135 N. Y. 463.)

CULLEN, J.   This action was brought to set aside an assessment levied against the property of the plaintiff in the city

of Syracuse for a local improvement, and to enjoin the defendants from seeking to enforce the same and from selling the plaintiff's property for the non-payment thereof. On October 24th, 1892, the common council of the city of Syracuse ordered the repavement of South Salina street, in said city, and directed the mayor and the clerk to enter into a contract for the performance of the work. By section 165 of the charter of the city (Chap. 26, Laws of 1885, as amended by chap. 449, Laws of 1888) it is provided that whenever the common council shall order any street to be paved, repaved or macadamized, it shall, before such work is done, cause sewer connections and service pipes from any gas and water mains in the street to be laid at such distances as the city engineer may prescribe, the cost of such service pipes and the laying thereof to be paid to the city by the company with whose main the same may connect. Some years prior to the commencement of this improvement the city of Syracuse had acquired the plant of a company which furnished water through the city, and from the time of such acquisition had itself supplied water to its inhabitants. The expense of the acquisition, maintenance and extension of the water works and plant was charged on the whole city, the city being remunerated by rates levied upon the consumers of water. After the execution of the contract for the improvement and prior to June 5th, 1893, the commissioner of public works notified the property owners along the street to make new service connections with the water main. The plaintiff and other property owners, failing to make such connections as directed by the engineer, the common council ordered that a contract should be entered into for laying the service pipes. On November 13, 1893, the common council directed that the city assessors assess the cost of making the water connections on the property between which and the main the connections had been made. In pursuance of this authority an assessment was levied and the tax roll of the assessment and a warrant were delivered to the city treasurer and a certified copy of the warrant filed in the county clerk's office. The

assessment or tax not having been paid, the city treasurer advertised the property assessed for sale, whereupon this action was brought. By section 139 of the charter no local improvement except for the construction or reconstruction of sidewalks (Sec. 159) can be made by the common council except on the petition of one-third in number of the owners of adjacent property or the owners of one-third of such property in lineal extent. The complaint alleged that no petition for laying service pipes had been made and that the assessment, therefore, was void. The learned trial judge so held, and further held that the defect in and invalidity of the assessment would not appear on the face of the proceedings to levy the same, nor in any action that might be brought by a purchaser on the assessment sale to obtain possession of the property sold. Judgment was rendered vacating the assessment and enjoining proceedings for its collection or for the sale of the property.

The learned counsel for the appellants does not on this appeal controvert the claim of the plaintiff or attack the grounds on which the decision below proceeded; but he contends that the common council were without any authority to levy a local assessment for such work, and that for this reason the assessment does not create a cloud upon the plaintiff's title which will justify the intervention of a court of equity to cancel. The rule is well settled in this state that to maintain an action to remove an assessment as a cloud upon title it must not only appear that the proceedings are regular on their face and invalid only because of a defect dehors the record, but also that the defect will not necessarily appear in proceedings to enforce the lien. (*Marsh* v. *City of Brooklyn*, 59 N. Y. 280 ; *Stuart* v. *Palmer*, 74 N. Y. 183 ; same principle, *Mellen* v. *Mellen*, 139 N. Y. 210 at 219.) We agree with the appellants' claim that the common council had no authority to assess the cost of the service connections upon the abutting lands. Until the city acquired the water plant the cost of such work was by the statute chargeable to the private corporation ; when the city succeeded the water company, the cost was

21

chargeable to the maintenance of the water supply. After the repavement of the street had been ordered and the contract therefor let, subdivision 15 of section 22 of the charter was amended by chapter 531 of the Laws of 1893 so as to empower the common council by ordinance " to regulate and compel the making of the proper connections between the premises abutting on any street, or part of a street, and any water or gas main or sewer or electrical conduit therein ; " this amendment of the law, however, gave the common council no authority to levy an assessment for the cost of such connections. The common council could only act on the subject by ordinance, and such ordinance could only be enforced by penalties as provided for in section 25. The levying of an assessment for work of this character was, therefore, wholly without authority and the assessment was void.

These views would lead to a reversal of the judgment below were it not for the peculiar provisions of the city charter relative to taxes and assessments. By title VII of that statute the common council of the city is authorized to raise by tax moneys necessary for city purposes and the method of imposing and collecting city taxes is prescribed. By section 126 of the charter all the provisions relative to the imposition and collection of city taxes are made applicable to local assessments except that no sale for an unpaid local assessment can be had within a year from the time the same becomes due.

It was charged in the complaint and the trial court found that at the time of the commencement of the action the city treasurer had advertised the plaintiff's property for sale for the non-payment of the assessment thereon. Section 119 provides that the treasurer shall execute to a purchaser on the sale " a certificate in writing, which shall contain a description of the real estate purchased, the amount paid therefor, the date of the sale, and that the same was sold for unpaid city taxes." The purchaser and his assigns are authorized immediately upon receiving such certificate by virtue thereof to lawfully possess, hold and enjoy for their use and benefit forever the real estate described in the certificate unless redeemed ; though

they cannot oust actual occupants until the expiration of the time for redemption. Upon default in redemption as prescribed by the statute the treasurer is to execute a conveyance in fee of the real estate sold which "shall be conclusive evidence that the sale was regular, and also presumptive evidence that all the previous proceedings were regular according to law and the provisions of this act." (Section 123.) Certificates and conveyances may be recorded in the same manner and with like effect as a deed acknowledged or proved according to law. If the purpose or work for which this assessment was laid would appear in the certificate or conveyance executed by the treasurer, the invalidity of the assessment and of the certificate or conveyance would also appear on the face of the latter instruments and it might well be claimed that they did not constitute a cloud upon the plaintiff's title. But the difficulty is that the statute does not seem to require any statement in the certificate or conveyance as to the character of the tax or assessment for the non-payment of which the sale was had, but only that the sale was had for unpaid city taxes. This seems to have been the view taken by the city officials. The form of deed executed by the treasurer on tax and assessment sales appears in the evidence before us. In the conveyance the only reference to the assessment is that the lands were sold "for the non-payment of the city tax duly levied thereon in and for the year * * *." If such a certificate or conveyance is a sufficient compliance with the statute, then it is clear that the invalidity of the assessment will not be disclosed and that these instruments will constitute *prima facie* liens upon the plaintiff's property.

This case is somewhat exceptional. In most if not all the cases in this state where the property owner has failed to maintain an action of this character, relief has been denied on the ground that the very defect for which it was sought to impeach or cancel the assessment or tax sale appeared on the face of the proceedings. In this case, however, the appellants admit that the assessment is illegal by reason of the defect charged by the plaintiff, and also that such defect will not

appear in the certificate and conveyance given on the sale, but seek to defeat the plaintiff's right to relief on the claim that the assessment is wholly void on other grounds. We think that in such a case the burden rests upon the appellants to show affirmatively that at all times the invalidity, not only of the assessment, but of the certificate and conveyance that may be given thereon, will distinctly appear and the plaintiff's title be in no way put in hazard or jeopardy. This burden has not been discharged. It may be that on an examination of other provisions of the charter than those to which our attention has been called, or which our own research has enabled us to find, we might entertain a different view of the sufficiency of these instruments in the form at present in use to establish *prima facie* title in the tax purchaser. But with the light now before us we are of opinion that the certificate and conveyance which it is admitted will be given on the sale threatened, will constitute a cloud upon the plaintiff's title, the creation of which he has the same right to enjoin as he would have after their creation to have them canceled. The character of the charter provisions relative to taxes and assessments, to which we have referred, distinguishes this case from that of *Saunders* v. *Village of Yonkers* (63 N. Y. 489).

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, LANDON and WERNER, JJ., concur.

Judgment affirmed.